United States District Court
Southern District of Texas
**ENTERED**
November 08, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, § | |
| § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-22-2155 |
| § | |
| CHOICE! ENERGY SERVICES RETAIL § | |
| LP and JASON SCARBROUGH, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

In December 2020, the Schork Group, Inc. sued Choice! Energy Services Retail, LP and

its employee, Jason Scarbrough, in the United States District Court for the Eastern District of

Pennsylvania. The Schork Group asserted claims for copyright infringement that allegedly

occurred between 2015 and 2018. *Schork Grp., Inc. v. Choice! Energy Servs. Retail, LP*, No. 20-

cv-06507 (E.D. Pa., filed Dec. 28, 2020). Sentinel Insurance Company provided commercial

general liability insurance to Choice! Energy Services between May 29, 2015, and May 29, 2021.

In July 2022, Sentinel sued Choice! Energy Services and Scarborough in this court, seeking

a declaratory judgment that Sentinel does not owe Choice! Energy Services or Scarbrough a duty

to defend or indemnify in the underlying litigation. Sentinel argues that the policies do not cover

Scarbrough's conduct or any resulting liability and that various exclusions preclude coverage.

Choice! Energy Services and Scarbrough moved for dismissal under Rule 12(b)(6) or, in the

alternative, for a more specific pleading under Rule 12(e). (Docket Entry No. 6). They argued

that, under the broad duty to defend recognized in Texas, at least some claims are covered and not

excluded under the policy. As to the duty to indemnify, Choice! Energy Services and Scarbrough

argued that the duty to indemnify has not yet arisen, but that the Policy would cover any liability resulting from the underlying case.

Because the parties attached, and the court considered, materials outside the pleadings, the court converted the motion to dismiss into a motion for summary judgment.  (Docket Entry No. 20); *see* FED. R. CIV. P. 12(d).  The court allowed time to supplement the briefs and the record, which Sentinel and the defendants timely did.  (Docket Entry Nos. 22, 23).

Having considered the briefing, record, and applicable law, the court grants the motion for summary judgment, finding that, on the current record, Sentinel does have a duty to defend in the underlying litigation.  The court does not reach the duty to indemnify.  Sentinel may amend to seek a declaratory judgment on the duty to indemnify after the underlying litigation is resolved.  The reasons are set out below.

## I.    Background

### A.      The Underlying Litigation

The Schork Group is a Pennsylvania corporation that provides market analysis and price-range forecasts for the energy industry, primarily through the distribution of its flagship publication, the *Schork Report*, to subscribers.  (Docket Entry No. 6-2, at 5).  The *Schork Report* contains commentary and analysis, as well as *Schork Report*-generated charts and graphs.  (*Id.*).  As reflected in the terms and conditions distributed with each subscription and again with each issue, the *Schork Report* is registered with the U.S. Copyright Office.  (*Id.* at 5–6).  The terms and conditions state that the *Report* may be quoted only if proper copyright designations are provided, the quoted material contains no omissions, and a copy of the quoted material is provided to the Schork Group.  (*Id.* at 6).

The Schork Group alleges that, in 2011, Scarbrough requested and was granted a single seat license, which allowed Scarbrough (and only Scarbrough) to receive the *Schork Report*. (*Id.*). According to the Schork Group, Scarbrough copied and internally distributed to Choice! Energy Services information from the various reports on at least 36 occasions between 2015 and 2018. (*Id.* at 7). The Schork Group states that the copying occurred despite the fact that it informed the Choice! Energy Services managing partner in September 2014 that any distribution, including within the subscribing company, would violate the copyright. (*Id.*).

The Schork Group's complaint asserts five claims against Choice! Energy Services and Scarbrough: (1) willful infringement of the Group's copyrighted materials, in violation of 17 U.S.C. § 501; (2) circumvention of protective technological measures, in violation of 17 U.S.C. § 1201; (3) removal or alteration of copyrighted material, in violation of 17 U.S.C. § 1202; (4) breach of contract; and (5) unjust enrichment. (Docket Entry No. 6-1).

### B. The Current Litigation

Sentinel first issued a year-long liability insurance policy to Choice! Energy Services on May 29, 2015. The Policy was renewed on May 29, 2016; May 29, 2017; May 29, 2018; May 29, 2019; and May 29, 2020. (Docket Entry Nos. 1-2, 22-1, 22-2, 22-3, 22-4, 22-5). Each renewed policy is essentially the same. The Policy provides business liability coverage, with limits of $1,000,000 per occurrence, $1,000,000 for personal and advertising injury, and a $2,000,000 general aggregate. (Docket Entry No. 1-2, at 24). The Policy also provides umbrella liability coverage up to $5,000,000 per occurrence and $5,000,000 in the aggregate. (*Id.* at 164).

The relevant portions of the business liability coverage are as follows:

### A. COVERAGES

1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)

3

Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

. . . .

b. This insurance applies:

. . . .

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

. . . .

**B. EXCLUSIONS**

1. APPLICABILITY TO BUSINESS LIABILITY COVERAGE

This insurance does not apply to:

a. Expected or Intended Injury

. . . .

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

. . . .

p. Personal and advertising injury

"Personal and advertising injury":

. . . .

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

4

. . . .

(7) (a) Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

(b) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity;

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

(1) Infringement, in your "advertisement", of:

(a) Copyright;

(b) Slogan; or

(c) Title of any literary or artistic work; or

(2) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

. . . .

## G.  LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

a. (1) Radio;

(2) Television;

(3) Billboard;

(4) Magazine;

(5) Newspaper;

b. The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

c. Any other publication that is given widespread public distribution.

. . . .

2. "Advertising idea" means any idea for an "advertisement".

5

> . . . .
>
> 8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> > . . . .
>
> 17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> > . . . .
>
> > g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement";
>
> > > . . . .

(*Id.* at 63, 65, 70, 82–85, 87).

After the Schork Group sued Choice! Energy Services and Scarbrough in December 2020, Choice! Energy Services submitted the suit to Sentinel for coverage.  Sentinel initially agreed to participate in the defense of the underlying litigation.  In June 2022, with the underlying case still pending, Sentinel sued Choice! Energy Services and Scarbrough in this court, seeking a declaratory judgment that Sentinel does not owe the defendants either a duty to defend or indemnify.

## I.     The Legal Standards

### A.     Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)

(quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact."  *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'"  *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion."  *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial."  *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).  The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case.  *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted).  Of course, all reasonable inferences are drawn in the nonmovant's favor.  *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).  But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"  *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

7

### B.    The Applicable State Law

This is a diversity case, so state law applies.  *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001).  The Policy does not contain a choice-of-law provision. (Docket Entry No. 6, at 14 n.5).  Because "the forum state . . . provides the law that governs [the] choice-of-law analysis," the court looks at Texas choice-of-law principles.  *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015).  Under Texas choice-of-law principles, Texas law governs insurance policies "payable to any citizen or inhabitant of [Texas] by any insurance company or corporation doing business within [Texas]."  Tex. Ins. Code § 21.42.  The parties have not disputed that Choice! Energy Services is a Texas corporation and that Sentinel does business in Texas.  Texas law applies.

### C.    The Duty to Defend

"Under Texas law, an insurer may have a duty to defend a lawsuit against its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).  To determine whether the duty exists, Texas courts follow the "eight corners" rule, under which the court compares the allegations in the four corners of the plaintiff's pleading with the provisions in the four corners of the insurance policy.  *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  If analyzing the eight corners shows the possibility of coverage, the insurer has the duty to defend.

"It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage."  *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The Texas eight-corners rule is "very favorable to insureds."  *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).  "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is

8

that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (quoting reference omitted). "The allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435, 446 (5th Cir. 2018).  "While courts may not read facts into the petition or speculate as to factual scenarios which might trigger coverage under the policy, they 'may draw inferences from the petition that may lead to a finding of coverage.'" *Id.* at 447.

The duty to defend exists "[i]f *any* allegation in the complaint is even *potentially* covered by the policy." *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492 (5th Cir. 1992) (emphasis added).  "If the petition pleads facts sufficient to create the *potential* of covered liability, then the insurer has a duty to defend the *entire* case, even if some of the alleged injuries are *not* covered." *Lyda Swinerton Builders*, 903 F.3d at 447.

### D.     The Duty to Indemnify

Under Texas law, the duties to defend and indemnify are distinct and "can arise independently of one another because the duty to defend is determined by pleadings, but the duty to indemnify is determined by the facts that are eventually ascertained in the underlying lawsuit." *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016).  "Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *Id.*  "[A]n insurer cannot obtain resolution of the duty to indemnify solely on the basis of the pleadings in the underlying lawsuit" unless "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).

## II.    Analysis

The underlying complaint alleges that Choice! Energy Services and Scarbrough committed copyright infringement, circumvented the Schork Group's technological measures in order to commit that infringement, removed or altered copyrighted material, breached their contract with the Schork Group, and were unjustly enriched in the process.  (Docket Entry No. 6-1).  If any of these claims are potentially covered and not excluded, then Sentinel has a duty to defend Choice! Energy Services and Scarbrough[1] in the underlying litigation.  *See Enserch Corp.*, 952 F.2d at 1492; *Lyda Swinerton Builders*, 903 F.3d at 447.  "The insured bears the initial burden of showing that the claim against her is potentially within the insurance policy's scope of coverage."  *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016).  The court finds that the defendants have met that initial burden.

The Policy provides coverage for "'personal and advertising injury' caused by an offense arising out of [the insured's] business."  (Docket Entry No. 1-2, at 63).  A "personal and advertising injury" includes an "injury . . . arising out of" copyright infringement in an advertisement.  (*Id.* at 84–85).  The Policy defines "advertisement" as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services."  (*Id.* at 82).  The Policy lists various means of publication, including a catchall provision stating that "[a]ny other publication that is given widespread public dissemination."  (*Id.*).  "Internet sites

---

[1] Sentinel's complaint in this case alleges that Sentinel does not have a duty to defend in part because "Scarbrough's actions were not within the scope of his employment by Choice! or while performing duties relating to the conduct of Choice!'s business; therefore, Scarbrough is not an 'insured' as defined in the Policies."  (Docket Entry No. 1, at ¶ 33). Sentinel did not adequately brief this point in its initial or supplemental brief.  *See* (Docket Entry Nos. 7, 13, 22).  The court finds that the underlying complaint adequately alleges that Scarbrough was engaging in conduct that related to Choice! Energy Services's business, arguing that Choice! Energy Services "had the right and ability to control Defendant Scarbrough's infringing conduct" and that it "had an obvious and direct financial interest in Defendant Scarbrough's infringing conduct."  (Docket Entry No. 6-1, at ¶¶ 52–53).  The Policy also defines "employee" as a non-temporary, leased employee.  (Docket Entry No. 1-2, at 83).  There is no evidence in the record that Scarbrough does not fit that definition.

are a recognized means of 'publication.'"   *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*,
203 F. Supp. 2d 704, 714 (S.D. Tex. 2000).

The underlying complaint alleges a personal and advertising injury.   The underlying
complaint alleges that Choice! Energy Services "participa[ted] in the infringement of the [Schork
Group] Works through the publication of the Infringing Works to [Choice! Energy Services's]
website" and passed that material off "as its own."  (Docket Entry No. 6-1, at ¶ 55).  The underlying
complaint alleges that a "number of articles containing" the infringed works "remain available on
the [Choice! Energy Services] website."  (*Id.* at ¶ 62).  The complaint lists various links to pages
on Choice! Energy Services's website that contain the allegedly infringing information, and these
links are publicly accessible.   (*Id.*).   This "widespread public dissemination" is "advertising"
within the meaning of the Policy.   Because the underlying complaint pleads a "personal and
advertisement injury," a duty to defend is triggered.

Sentinel argues that three exclusions apply: (1) the breach of contract exclusion; (2) the
expected or intended injury exclusion; and (3) the intellectual property exclusion.  "If an insurer
relies on a policy's exclusions to deny that it has a duty to defend, 'it bears the burden of proving
that one or more of those exclusions apply.'   Courts must 'construe the exclusion narrowly,
resolving any ambiguity in favor of the insured.'"  *Fed. Ins. Co.*, 837 F.3d at 552–53 (footnote
omitted) (quoting reference omitted) (applying Texas law).  "[I]n reviewing the underlying
pleadings, the court must focus on the factual allegations that show the origin of the damages rather
than on the legal theories alleged."  *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (quoting
reference omitted).

A.      **The Duty to Defend**

i.      *The Breach of Contract Exclusion*

The Policy excludes coverage for personal and advertising injuries "[a]rising out of any breach of contract, except an implied contract to use another's 'advertising idea' in your 'advertisement.'"  (Docket Entry No. 1-2, at 70).  The central dispute is over the application of the phrase "arising out of."  Sentinel argues that although breach of contract is only one of the causes of action alleged against Choice! Energy Services and Scarborough, the breach of contract claim bears an "incidental" relationship to the copyright claims because Scarbrough received the copyrighted materials after entering into the single seat license agreement with the Schork Group.  (Docket Entry No. 13, at 8–11).  Choice! Energy Services and Scarborough argue that "arising out of" is narrower.  They argue that because the breach of the agreement was not the "but for" cause of the alleged infringement, the infringement claim does not "arise out of" the breach of contract.  (Docket Entry No. 9, at 7–12).

Cases applying Texas law use both "but for" and "incidental relationship" in explaining the meaning of "arising out of" in an insurance agreement.  In *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453 (5th Cir. 2003), the Fifth Circuit held that "[u]nder Texas law, when an exclusion precludes coverage for injuries 'arising out of' particular conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.'"  *Id.* at 458 (quoting Fifth Circuit precedent).  The Fifth Circuit in *EMCASCO Insurance Co. v. American International Specialty Lines Insurance Co.*, 438 F.3d 519 (5th Cir. 2006), again explained "arising out of" using broad language, stating that the phrase is "ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to, or having connection with.'"  *Id.* at 524–25 (quoting Fifth Circuit precedent).  But

12

this broad reading appears inconsistent with the Texas insurance law rule that exclusions must be construed narrowly and that ambiguity must be resolved "in favor of the insured." *Fed. Ins. Co.*, 837 F.3d at 553.  This broad reading also appears inconsistent with Texas Supreme Court decisions that "ha[ve] held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004).

   This case does not require a determination of the precise limits of "arising out of" because even under a broad reading, there is at least one potentially covered allegation in the underlying complaint.  "If *any* allegation in the complaint is even *potentially* covered by the policy," then Sentinel has a duty to defend.  *Enserch Corp.*, 952 F.2d at 1492 (emphasis added).

   The court's analysis takes the four corners of the underlying complaint and the four corners of the insurance policy and construes the complaint allegations "liberally in favor of the insured." *Lyda Swinerton Builders, Inc.*, 903 F.3d at 446.  The Schork Group alleges that Choice! Energy Services (but not Scarbrough) breached its contract by engaging in three acts: (1) "forwarding or copying The Schork Report 'even for internal use' without . . . prior written permission"; (2) "printing more than one copy of The Schork Report or . . . sharing any printed copy of The Schork Report"; and (3) "paraphrasing or quoting out of context any language from the Schork Report." (Docket Entry No. 6-1, at ¶¶ 100–02).  In the copyright claim, the Schork Group alleges that Scarbrough and Choice! Energy Services copied and shared the *Schork Report*.  (*Id.* at ¶¶ 69–72).  This allegation bears at least an "incidental relationship to" the claim for breach of the single seat license.

The Schork Group also makes two claims that do not bear an incidental relationship to the breach of contract claim and were not alleged as part of the conduct giving rise to the breach of contract claim.  First, the Schork Group alleges that the Choice! Energy Services and Scarborough "circumvented technical measures implemented by [the Schork Group] to control access" to its copyrighted materials.  (*Id.* at ¶ 81).  The underlying complaint does not plead that conduct as part of the alleged breach of contract.  Second, the Schork Group alleges that Choice! Energy and Scarborough removed the Schork Group copyright logo from its copyrighted *Reports*.  (*Id.* at ¶ 94).  This, again, is unrelated to the breach of contract allegations.  Because some claims against the defendants are potentially covered, Sentinel has a duty to defend, despite the breach of contract exclusion.

### ii.     The Expected or Intended Injury Exclusion

The Policy also excludes coverage for personal and advertising injury "arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'"  (Docket Entry No. 1-2, at 65). Sentinel spends much of its briefs arguing that the complaint alleges that Choice! Energy Services and Scarbrough intentionally copied or forwarded the copyrighted works.  But the key phrase in the exclusion, as Choice! Energy Services and Scarborough correctly point out, is that the copying or forwarding conduct is done "with the expectation of inflicting 'personal and advertising injury.'"  The exclusion does not apply merely because the conduct—the copying or forwarding— is intentional.  Instead, the exclusion applies when the injury—the copyright infringement—is intentional.

The underlying complaint, interpreted liberally, alleges that Choice! Energy Services and Scarborough copied and distributed the Schork Group's copyrighted materials, but it does not

allege that they intended to commit copyright infringement.  The complaint presents a side-by-side comparison showing that the defendants copied a graph from the *Schork Report*.  (Docket Entry No. 6-1, at ¶ 46).  Without regard to whether this would be a valid legal defense in the underlying litigation, if the defendants believed that the graph was factual material not subject to copyright protection, then they would not have intended the injury of copyright infringement.  The fact that Choice! Energy Services and Scarborough copied and distributed the graph does not show that they intended to commit copyright infringement.  Sentinel has not met its burden to show that the intended or expected injury exclusion precludes coverage.

*iii.*     *The Intellectual Property Exclusion*

A third provision excludes coverage for personal and advertising injury "[a]rising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity."  (Docket Entry No. 1-2, at 87).  The intellectual property exclusion contains the following exception:

> However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:
>> (1) Infringement, in your "advertisement", of:
>>> (a) Copyright;
>>> (b) Slogan; or
>>> (c) Title of any literary or artistic work; or
>> (2) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

(*Id.*).  "Under Texas law, '[o]nce the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion.'"  *Fed. Ins. Co.*, 837 F.3d at 555.  "An exception to an exclusion is interpreted broadly in favor of coverage, '[b]ut that principle does not mean we should distort the exception in order to find coverage where

15

none exists.'" *Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 445 (5th Cir. 2022) (alteration in original) (quoting reference omitted).

Choice! Energy Services and Scarbrough do not dispute that the suit arises out of an alleged copyright infringement.  The issue is whether the exception to the exclusion applies.  Under the exception, the "exclusion does not apply if the only allegation in the claim . . . involving any intellectual property right is limited to" copyright infringement in an advertisement.  (Docket Entry No. 1-2, at 87).  Sentinel argues that because an advertisement requires "widespread public dissemination," and Choice! Energy Services and Scarborough are alleged to have both publicly disseminated but also internally redistributed the copyrighted works, the copyright infringement claim is not limited to infringement in an advertisement.  (Docket Entry No. 13, at 14).

Sentinel's characterization is unpersuasive because it appears to collapse the allegations in the copyright infringement claim with the allegations in the breach of contract claim.  The copyright infringement claim, unlike the breach of contract claim, does not clearly allege internal redistribution as a basis for infringement.  Instead, the copyright infringement claim alleges infringement in an advertisement: "Defendants Scarbrough and [Choice! Energy Services] have infringed [the Schork Group's] copyrights by copying, distributing, altering, and/or displaying [the Schork Group's] Works in materials prepared, published, and/or distributed by" the defendants. (Docket Entry No. 6-1, at ¶ 69.  The one ambiguity in the copyright infringement claim is this allegation: "Defendants Scarbrough and [Choice! Energy Services] also infringed [the Schork Group's] copyrights by printing, copying and/or redistributing [the Schork Group's] Reports without the consent, approval, or license of [the Schork Group.]"  (Docket Entry No. 6-1, at ¶ 71). This allegation does not include "in materials prepared, published, and/or distributed" by the

defendants, and it does not mention internal use.  The words "internal use" are not in the copyright infringement count, although they are in the breach of contract count.

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."  *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (quoting reference omitted).  As to the intellectual property exclusion, "the complaint does not state facts sufficient to clearly bring the case within or without the coverage." *Id.*  Sentinel is required to defend Scarbrough and Choice! Energy Services in the underlying litigation.

### B.      The Duty to Indemnify

Although the court holds that Sentinel owes the defendants a duty to defend in the underlying litigation, whether Sentinel owes a duty to indemnify is not yet ready for decision. "[T]he duty to indemnify is determined by the facts that are eventually ascertained in the underlying lawsuit." *Hartford Cas. Ins. Co.*, 827 F.3d at 430.  "Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *Id.*

The court does not address whether Sentinel has a duty to indemnify.  Sentinel may file an amended declaratory judgment action as to the duty to indemnify after the underlying litigation has concluded.

### III.    Conclusion

On the current record, the court grants the motion for summary judgment, but only as to the duty to defend.  Sentinel may file an amended declaratory judgment action on the duty to indemnify after the underlying litigation is resolved.


SIGNED on November 8, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge